UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| L. D.,<br><br>                Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI,<br><br>                Defendant. | Case No.  20-cv-06906-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 20 |

Plaintiff L.D.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433.  L.D. contends that the administrative law judge ("ALJ") erred in three respects.  First, L.D. contends that the ALJ erred by rejecting, without specific and legitimate reasons, the limitations assessed by an examining physician and state-agency consultant.  Second, L.D. contends that the ALJ failed to provide sufficient reasons for discounting her subjective testimony about her symptoms and limitations.  Third, L.D. contends that the ALJ erred in finding at step 5 that there exist a sufficient number of jobs in the national economy for someone with L.D.'s limitations.

The parties have filed cross-motions for summary judgment.  The matter was submitted

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials.  *See* Dkt. No. 1.  This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

United States District Court
Northern District of California

1   without oral argument.  Upon consideration of the moving and responding papers and the relevant

2   evidence of record, for the reasons set forth below, the Court grants in part and denies in part

3   L.D.'s motion for summary judgment, grants in part and denies in part the Commissioner's cross-

4   motion for summary judgment, and remands this matter for further administrative proceedings

5   consistent with this order.[3]

6   **I.    BACKGROUND**

7          L.D. filed an application for disability insurance benefits on April 3, 2018, when she was

8   48 years old, alleging that she has been disabled since February 20, 2015 due to a combination of

9   impairments, including most notably tendinopathy, arthritis, and a partial tear of the supraspinatus

10  tendon in her right shoulder, as well as pain from having both hips replaced.  AR[4] 388–89.

11         L.D. has a high school equivalent diploma.  AR 571.  She worked as an assembler in the

12  lighting industry between November 2005 and October 2007, as a day care owner between May

13  2008 and November 2012, as a food truck owner between January 2013 and December 2013, and

14  as a food preparer and server at a cafeteria from some point in 2014 to February 2015.  AR 578.

15         L.D.'s application was denied initially and on reconsideration.  AR 400, 416.  An ALJ held

16  a hearing on February 12, 2020 and subsequently issued an unfavorable decision on March 4,

17  2020.  AR 347–87, 15–27.  The ALJ found that L.D. had engaged in substantial gainful activity

18  from April 2019 through the date of the ALJ hearing based on her work at an adult daycare center.

19  AR 17-18, 351–54.  However, the ALJ found that L.D. had not engaged in substantial gainful

20  activity for the period beginning February 2015 until April 2019.  AR 17–18.  The ALJ further

21  found that L.D. has the following severe impairments: "right shoulder tendinopathy, partial tear of

22  the supraspinatus tendon [of the right shoulder], and arthritis of the acromioclavicular joint [of the

23  right shoulder]; status post bilateral hip replacements."  AR 18.  However, the ALJ concluded that

24  L.D. does not have an impairment or combination of impairments that meets or medically equals

25  the severity of one of the impairments listed in the Commissioner's regulations.  AR 19.

26

27  [3] All parties have expressly consented that all proceedings in this matter may be heard and finally
    adjudicated by a magistrate judge.  28 U.S.C. § 636; Fed. R. Civ. P. 73; Dkt. Nos. 9, 10.

28  [4] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 16.

United States District Court
Northern District of California

1    The ALJ determined that L.D. has the residual functional capacity ("RFC") to perform

2    sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following exertional limitations:

3        [L.D. can] lift and carry 10 pounds occasionally and 10 pounds
         frequently.  She can stand and walk for 2 hours total out of 8, but in
4        increments of no more than 30 minutes, then a change of position is
         needed.  Sitting is a total of 6 hours out of 8, but in increments of no
5        more than one hour, then a change of position is required.  On any
         change of position, there is no need to leave the workstation.  Postural
6        limitations are stairs and ramps are occasional.  Ladders, ropes, and
         scaffolds are never.  Balance can be done occasionally except where
7        there is prolonged walking, defined as more than 6 city blocks, then
         she would need a cane, but otherwise, she does not need a cane.
8        Stooping is occasional.  Crouch is occasional.  Kneel is never.  Crawl
         is never.  She can never work off unprotected heights and never work
9        around large, dangerous moving machinery.

10   AR 20.  The ALJ found that, as of the date of his decision, L.D. is unable to perform any

11   past relevant work, but is able to perform other jobs existing in significant numbers in the national

12   economy, such as final assembler, bench hand, and dial marker.  AR 26–27.  Accordingly, the

13   ALJ concluded that L.D. was not disabled from the alleged onset date of February 20, 2015

14   through the date of the decision of March 4, 2020.  AR 27.

15   The Appeals Council denied L.D.'s request for review of the ALJ's decision.  AR 1–3.

16   L.D. then filed the present action seeking judicial review of the decision denying her application

17   for disability insurance benefits.  Dkt. No. 1.

18   **II.    LEGAL STANDARD**

19   Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

20   decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

21   supported by substantial evidence or if it is based upon the application of improper legal

22   standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v.*

23   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context,

24   the term "substantial evidence" means "more than a mere scintilla" but "less than a

25   preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to

26   support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148,

27   1154 (2019) and *Molina v. Astrue*, 675 F.3d 1104, 1110–11 (9th Cir. 2012), *superseded by*

28   *regulation on other grounds*; internal quotation marks omitted); *see also Morgan*, 169 F.3d at 599

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (citation omitted).  When determining whether substantial evidence exists to support the

2    Commissioner's decision, the Court examines the administrative record as a whole, considering

3    adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v.*

4    *Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one

5    rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988

6    F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

7    **III.    DISCUSSION**

8         L.D. raises three challenges to the ALJ's decision.  First, L.D. argues that the ALJ rejected,

9    without specific and legitimate reasons, the manipulative limitations assessed by an examining

10   physician and state-agency consultant.  Second, she argues that the ALJ discounted, without

11   providing sufficient reasons, L.D.'s subjective testimony about her symptoms and limitations.

12   Third, L.D. argues that the ALJ erred in adopting the vocational expert's testimony regarding

13   L.D.'s ability to perform certain sedentary jobs because he failed to consider that L.D.'s additional

14   limitations are inconsistent with the requirements for those jobs and that her age places her in a

15   borderline age category, which impacts her ability to adjust to other work.

16        **A.    Medical Opinion Evidence**

17        L.D. argues that the ALJ erred by failing to provide specific and legitimate reasons

18   supported by substantial evidence for discounting parts of the opinions of consultative examiner

19   Lara Salamacha, M.D. and state agency consultant S. Lee, M.D.  Dkt. No. 19 at 13–16.

20   Specifically, L.D. argues that the ALJ erred by failing to include in L.D.'s RFC the manipulative

21   limitations assessed by Dr. Salamacha and Dr. Lee.  *Id.* at 15.  The Court agrees with the

22   Commissioner that the ALJ's evaluation of the opinions of Dr. Salamacha and Dr. Lee are

23   supported by substantial evidence.

24        Under the regulations that apply to L.D.'s application,[5] ALJs are required to evaluate the

25

26   _____

27   [5] On January 18, 2017 the Commissioner promulgated new regulations concerning the evaluation
     of medical opinions.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.
     Reg. 5844, 5844 (Jan. 18, 2017).  These new regulations apply to all applications for benefits filed
     after March 27, 2017.  *Id.*; 20 C.F.R. § 416.920c.  Since L.D.'s application was filed after March
28   27, 2017, these new regulations apply to her case.  *See* AR 388.

"persuasiveness" of all medical opinions in the record based on: (1) supportability; (2)

consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as

"evidence showing a medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements." 20 C.F.R.

§ 404.1520c. The first two factors are considered the most important, and the ALJ is required to

explicitly address them in his or her decision. *Id.* § 404.1520c(b)(2). The ALJ "may, but [is] not

required to," explain how he or she considered the remaining three factors listed in the regulations.

*Id.* "Although the regulations eliminate the 'physician hierarchy,' deference to specific medical

opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [the ALJ]

considered the medical opinions' and 'how persuasive [the ALJ] find[s] all of the medical

opinions.'" *V.W. v. Commissioner of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *14

(N.D. Cal. Mar. 30, 2020) (citations omitted); 20 C.F.R. §§ 404.1520c(a) and (b). As with all

other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported

by substantial evidence. *See Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4

(W.D. Wash. Apr. 9, 2020) (finding that, under the new regulations, "[t]he Court must . . .

continue to consider whether the ALJ's analysis has the support of substantial evidence."); *see* 42

U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, *if* supported

by substantial evidence, shall be conclusive") (emphasis added).

   Here, Dr. Salamacha, a consultative examiner, performed an orthopedic evaluation of L.D.

on May 31, 2018. AR 984–87. Dr. Salamacha reviewed L.D.'s medical records, noting that L.D.

was being "currently seen for shoulder joint pain, lateral epicondylitis and regional myofascial

pain." AR 984. Dr. Salamacha's physical examination of L.D. assessed L.D.'s range of motion in

her spine, hips, knees, ankles, shoulders, elbows, wrists, fingers and thumbs, and legs. AR 985–

86. Based on this examination, Dr. Salamacha found that "[t]he right elbow examination reveals

tenderness to palpation at the lateral epicondyle with no atrophy noted. … The claimant is tender

over the right trapezius with no rotator cuff weakness in forward flexion, internal or external

rotation." AR 986. Dr. Salamacha also found that "[t]he upper extremity exam reveals: 5/5

strength bilaterally in grasp, finger abduction, thumb elevation, wrist flexion and extension, elbow

United States District Court
Northern District of California

flexion and extension and should abduction."  AR 986.  Dr. Salamacha diagnosed L.D. with

"[r]ight lateral epicondylitis with acute injury on chronic overuse, which is improved after one

injection and extensive physical therapy with the home exercise program," as well as "[r]ight

trapezius spasm, which also is improved with change of repetitive motion and home exercise."

AR 986.  Dr. Salamacha's functional assessment of L.D. concluded that "[s]he may perform

occasional reaching and frequent but not constant handling, feeling, fingering and grasping up to

five pounds with the right hand and occasional grasping up to 10 pounds."  AR 986.

   Dr. Lee, a state agency consultant, reviewed the medical evidence available on

reconsideration on September 7, 2018.  He appears to have adopted an earlier assessment by

another state agency consult, Dr. A. Mamaril.  *See* AR 397–98.  This assessment included the

limitations recommended by Dr. Salamacha that L.D. could perform light work, with certain

exertional limitations, including the manipulative limitations assessed by Dr. Salamacha.  AR 414.

   The ALJ found that the opinions of Dr. Salamacha and Dr. Lee were "less persuasive" than

the opinion provided by Dr. A. Lorber, M.D., the medical expert who testified at the hearing.

With respect to Dr. Salamacha, the ALJ explained that her opinion was not supported by her

single physical examination of L.D. on May 31, 2018.  AR 24.  The ALJ further explained that

"[t]he consultative examination is only a snapshot of functioning at a single point in time, and the

findings are limited by the validity of the test results, observations, review of records and

interaction with the claimant on the date of the evaluation only."  *Id.*  The ALJ also found that Dr.

Salamacha's opinion was "inconsistent with the opinion of Dr. Lorber, who had the opportunity to

review the medical evidence in its entirety."  *Id.*  With respect to Dr. Lee, the ALJ observed that

"the State agency medical consultants did not have the opportunity to review updated evidence

received at the hearing level or have access to the hearing testimony."  *Id.*  The ALJ also found Dr.

Lee's opinion inconsistent with Dr. Lorber's.  *Id.*

   The Court agrees with L.D. that the ALJ did not clearly explain why he found the

manipulative limitations assessed by Dr. Salamacha and Dr. Lee are unsupported by the medical

evidence and does not identify the additional or updated evidence in the record that he believes

contradicts or undermines those limitations.  The ALJ's reference to Dr. Lorber's opinion as

"better supported and more consistent with the evidence as a whole" does not adequately explain why the ALJ chose to discount Dr. Salamacha's and Dr. Lee's opinions regarding L.D.'s manipulative limitations and to omit those limitations from L.D.'s RFC.  AR 24.  The Court notes that Dr. Salamacha conducted a physical examination of L.D., whereas Dr. Lee and Dr. Lorber did not.  *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

The ALJ erred in failing to provide sufficient reasons for concluding that the opinions of Dr. Salamacha and Dr. Lee are "less persuasive" and that the manipulative limitations they assessed should not be part of L.D.'s RFC.

### B.     L.D.'s Subjective Testimony

L.D. also argues that the ALJ erred in determining that her testimony about her symptoms and limitations is not consistent with the medical evidence.  Dkt. No. 19-1 at 16–18.  Specifically, L.D. says that she experiences pain in her right shoulder, neck, and arm that is so severe it would preclude her from performing even sedentary work.  *Id.* at 18.

In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis.  First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)).  If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'"  *Id.* (quoting *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons.").

Here, the ALJ found that "[L.D.'s] medically determinable impairments could reasonably be expected to cause the alleged symptoms" and cited no evidence of malingering.  AR 21.  Thus, the ALJ needed to provide "specific, clear and convincing reasons" for rejecting L.D.'s testimony

1    concerning the intensity, persistence, and limiting effects of her symptoms. *Tommasetti*, 533 F.3d

2    at 1039.

3         In her exertion questionnaire completed on April 18, 2018, L.D. stated that the pain in her

4    shoulder and elbow became "really bad" with "repetitive action" like typing and chopping.  AR

5    584.  She also stated that she could "shower, cook breakfast, eat, drive to take my son to work, and

6    go to school," as well as "cook lunch, study online for 3 hours[,] eat dinner and clean the kitchen."

7    AR 584.  She stated that it would take her one hour to walk one mile, and that she could lift things

8    "no more than 5 or 10 pounds" and carry "small boxes or containers no more than 10 lbs."  AR

9    585.  Although she cleaned her own home, she could not use the vacuum.  AR 585.  She wrote

10   that she could not "bend[]" or "lift[]," and that she used a brace.  AR 587.

11        In her disability report completed on October 19, 2018 and filed in connection with her

12   appeal of her disability determination, L.D. wrote that since her initial and renewed applications,

13   she had experienced "[s]evere chronic back pain," with "[w]orsening pain and increase of stiffness

14   of back and shoulder."  AR 605.  She had a "limited range of motion making it difficult to get

15   dressed, cook, or clean" and required assistance from her family for daily activities.  AR 605.  She

16   was also "unable to bend over."  AR 605.

17        At the hearing before the ALJ on February 12, 2020, L.D. testified that she had pain "in

18   my right shoulder and on the neck from behind my ear to my shoulder."  AR 350.  This pain was

19   exacerbated by driving for long periods and working in an adult daycare center.  AR 350–51, 369.

20   She testified that when she worked five-hour shifts at the daycare center, during which she stood

21   most of the time, she would experience pain in her right shoulder, neck, and shoulder blade area

22   when gesturing or leaning over.  AR 365–66.  She noted that her daycare center job was "easy

23   right now" because she was "doing just light activities like doing the arts and crafts" or escorting

24   people to the bathroom.  AR 367.

25        In finding L.D.'s statements inconsistent with the medical and other evidence in the record,

26   the ALJ cited: (1) diagnostic imaging studies showing negative or mild findings; (2) physical

27   examinations showing substantially normal findings over an extended period; (3) Dr. Salamacha's

28   May 31, 2018 orthopedic consultative examination showing normal findings; (4) evidence that

United States District Court
Northern District of California

8

1    L.D.'s symptoms improved with treatment; and (5) L.D.'s daily activities, which suggested an

2    ability to perform at a greater degree of functioning than she claimed.  AR 21–22.

3           The ALJ's reasons for finding L.D.'s testimony not entirely consistent with the medical

4    evidence in the record meet the clear and convincing standard.  Contrary to L.D.'s argument that

5    the ALJ identified no particular findings inconsistent with any of the specific functional deficits

6    L.D. described, the ALJ pointed to numerous findings inconsistent with L.D.'s testimony.  For

7    example, an x-ray of L.D.'s right shoulder from August 2, 2018 showed "[n]o fracture of

8    dislocation," "[u]nremarkable" joints, and "[u]nremarkable [s]oft tissues."  AR 21, 1052.  An x-

9    ray of L.D.'s right shoulder from July 30, 2019 also showed "[n]o acute fracture of dislocation,"

10   "[n]o calcific tendinosis," "[n]o significant degenerative changes," and "[n]o significant

11   abnormality."  AR 21, 1177.  The ALJ also cited eight physical examinations taken between 2016

12   and 2020 (*see* AR 22), including an exam taken on January 10, 2020 that showed that L.D.'s

13   "neck is normal" with some "tenderness to palpation" and a "full [range of motion] with pain at

14   end."  AR 1397.  This examination also showed that L.D.'s bilateral shoulder range of motion was

15   "within functional limits" and that she had muscle strength of "5/5" in her right arm.  AR 1397.

16   Further, the ALJ pointed to Dr. Salamacha's orthopedic consultative examination, which revealed

17   "5/5 strength bilaterally in grasp, finger abduction, thumb elevation, wrist flexion and extension,

18   elbow flexion and extension and shoulder abduction" in L.D.'s upper extremity.  AR 986.  The

19   ALJ also cited Dr. Salamacha's record of L.D.'s symptoms improving with treatment from a

20   chiropractor and home exercises.  AR 984.  The ALJ's final reason, that L.D.'s independence

21   while performing daily activities belied a greater degree of functioning than claimed, is not well-

22   supported, as the record reflects that as of October 19, 2018 L.D. needed assistance to perform

23   "normal daily activities."  AR 605.  However, given that on the whole, the evidence cited by the

24   ALJ provide substantial evidence for the ALJ's conclusion that L.D.'s description of her

25   limitations was not entirely consistent with the record, the Court finds the ALJ's reasons clear and

26   convincing.

27          Accordingly, the ALJ did not err in his evaluation of L.D.'s subjective testimony.

28

United States District Court
Northern District of California

9

### C.      The ALJ's Step-Five Determination

L.D. argues that the ALJ's step 5 determination is not supported by substantial evidence for two reasons: first, that each of the sedentary jobs identified by the vocational expert and adopted by the ALJ cannot be performed by someone with L.D.'s limitations as set forth in her RFC, and that the ALJ failed to develop the record to address a conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony on this point; and second, that in evaluating L.D.'s ability to adjust to other work, the ALJ failed to apply a higher age category given L.D.'s borderline age.  AR 7–12.  The Court agrees with L.D. that the ALJ's step 5 determination is not supported by substantial evidence.

### 1.      Sedentary Work

At step 5, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations."  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *see also* 20 C.F.R. § 404.1520(g).  After assessing the claimant's RFC, the ALJ must consider potential occupations that the claimant may be able to perform.  *Id.*; 20 C.F.R. § 404.1566.  In making this determination, the ALJ relies on the DOT, which is the Social Security Administration's "primary source of reliable job information" regarding jobs that exist in the national economy.  *Zavalin*, 778 F.3d at 846 (citation omitted).  The DOT describes the requirements for each listed occupation.

In addition to the DOT, the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of her residual functional capacity.  *Zavalin*, 778 F.3d at 846; 20 C.F.R. § 404.1566(e).  To conclude the step 5 analysis, the ALJ determines "whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy."  *Zavalin*, 778 F.3d at 846 (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency."  *Zavalin*, 778 F.3d at 846 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153–54

(9th Cir. 2007)).  Before relying on the expert's testimony to reach a disability determination, the ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable."  *Id.*; *see also* Social Security Ruling 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The ALJ's failure to resolve an apparent inconsistency may preclude this Court from determining that the ALJ's decision is indeed supported by substantial evidence.  *Zavalin,* 778 F.3d at 846 (quoting *Massachi*, 486 F.3d at 1154).

"Sedentary work" generally requires a person to remain in a seated position for uninterrupted two-hour intervals.  Social Security Ruling 96-6p, "Titles II and XVI: Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work," 61 Fed. Reg. 34482 (Jul. 2, 1996).  The Commissioner's guidance on how limitations on sitting may impact the occupational base for sedentary work provides:  "In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.  If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded.  The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work."  *Id.*; Dkt. No. 19-1 at 8.

Here, the ALJ determined that L.D.'s RFC included the following limitation regarding sitting:  "Sitting is a total of 6 hours out of 8, but in increments of no more than one hour, then a change of position is required."  AR 20.  The vocational expert acknowledged this limitation (AR 378), but testified that all three representative jobs—"final assembler," "bench hand," and "dial marker"—were sedentary, unskilled assembly jobs that L.D. could perform.  AR 379–80.  The ALJ credited this testimony.  AR 26.

The vocational expert was not asked, and did not explain, how L.D. could perform each of the representative jobs in a manner consistent with the Commissioner's guidance that sedentary work requires a person to remain seated for approximately two-hour intervals when L.D.'s RFC specifies that she must change position after no more than one hour.  Further, the DOT's preamble for Benchwork Occupations, which encompasses all three representative jobs, states that such

work "is usually performed at a set position." Dictionary of Occupational Titles, "Benchwork Occupations," (4th ed., rev. 1991). The ALJ did not ask the vocational expert questions about how L.D.'s sitting limitations impact the occupational base for sedentary work or her ability to perform the work required for these three representative positions, and the ALJ did not address this issue in his discussion of step 5.

Because the ALJ failed to recognize a potential conflict between the DOT and the vocational expert's testimony, did not ask the vocational expert to explain the potential conflict during the hearing, and did not explain the resolution of the conflict in his decision, this was an error. *See Zavalin*, 778 F.3d at 846.

### 2.   Borderline Age Situation

When deciding whether a claimant has the ability to do other work under 20 C.F.R. § 404.1520(f)(1), an ALJ will use each of the applicable age categories described in 20 C.F.R. § 404.1563(c)–(e) ("Younger person" (under age 50), "Person closely approaching advanced age" (age 50–54), and "Person of advanced age" (age 55 or older)). A person "closely approaching advanced age" is between ages 50 and 54. 20 C.F.R. § 404.1563(d). The regulations provide that an ALJ "will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, [an ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 404.1563(b).

Here, L.D. was 49 years, 8 months, and 24 days old at the time of the ALJ's decision on March 4, 2020, and so she was within three months of categorization as a person "closely approaching advanced age." AR 27, 388. Here, given L.D.'s limited education and the vocational expert's testimony that she has no transferable skills, application of the older age category would result in a determination that L.D. was disabled.[6] *See* 20 C.F.R. § 404, Subpart P, Appendix 2,

---

[6] The Commissioner disputes this result, arguing that L.D.'s RFC fell between the sedentary and light exertion levels. Dkt. No. 20 at 8. The Commissioner's position is not supported by the record. During the hearing, the vocational expert testified that L.D. would be unable to do her prior relevant work, all of which the vocational expert rated as "light" work. *See* AR 374–76.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Table 1 (Rule 201.14).  Accordingly, L.D.'s application presented a borderline age situation.

2  Program Operations Manual System (POMS), DI 25015.006 Borderline Age.

3  　　　　The Commissioner argues that although an ALJ "may consider" using the higher age

4  category in such borderline age situations, an ALJ is not required to provide a written explanation

5  of such consideration in his or her decision.  Dkt. No. 20 at 7–8.  The Commissioner's argument is

6  inconsistent with the applicable regulation, which states that the ALJ "*will* consider whether to use

7  the older age category" in a borderline age situation, 20 C.F.R. § 404.1563(b) (emphasis added).

8  The Commissioner's argument is also inconsistent with the POMS borderline age policy, which

9  directs an ALJ to "[d]ocument how you considered borderline age whether you allow or deny the

10  claim.  Explain your decision to use the next higher age category or your decision to use the

11  claimant's chronological age, including the case-specific supporting factors."  Program Operations

12  Manual System (POMS), DI 25015.006 Borderline Age (Document Consideration Of Borderline

13  Age).

14  　　　　The ALJ does not specifically discuss L.D.'s age, except to observe that she was born on

15  June 9, 1970 "and was 44 years old, which is defined as a younger individual."  AR 25.  The

16  record reflects that L.D. was 47 years old at the time of her initial application on April 3, 2018 and

17  was nearing 50 years old at the time of the ALJ's decision on March 4, 2020.  Nothing in the

18  record reflects that the ALJ considered L.D. at the borderline of the "approaching advanced age"

19  category, let alone how he considered her age.

20  　　　　Accordingly, because the ALJ was required to consider applying a higher age category to

21  L.D. but did not do so, this error requires remand.

22  **IV.    DISPOSITION**

23  　　　　"When the ALJ denies benefits and the court finds error, the court ordinarily must remand

24  to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*,

25  880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

26  1090, 1099 (9th Cir. 2014)).  Because it is not clear from the record that the ALJ would be

27  _____

28  Further, the vocational expert testified that L.D. would be "really good at doing—with the
sedentary restrictions, sedentary, unskilled assembly-related jobs."  AR 379.

1    required to find A.L. disabled if all the evidence were properly evaluated, remand is appropriate.

2    On remand, the ALJ must reassess the opinions of Dr. Salamacha and Dr. Lee.  The ALJ should

3    reconsider the vocational expert's testimony to the extent that it conflicts with the DOT and, if

4    necessary, obtain additional testimony.  The ALJ should also consider the application of a higher

5    age category to L.D.'s borderline age situation and document such consideration in writing.

6    **V.      CONCLUSION**

7            Based on the foregoing, L.D.'s motion for summary judgment is granted in part and denied

8    in part on the grounds explained above.  The Commissioner's cross-motion for summary judgment

9    is granted in part and denied in part on the grounds explained above.  This matter is remanded for

10   further proceedings consistent with this order.  The Clerk of the Court shall enter judgment

11   accordingly and close the file.

12           **IT IS SO ORDERED.**

13   Dated: March 31, 2022

14

15

16                                          VIRGINIA K. DEMARCHI
                                            United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28